Wilkes, guardian. *vs.* Hughes.

---

JOHN D. WILKES, guardian, etc., plaintiff in error, *vs.* ANGUS HUGHES, defendant in error.

W. hired to H. a slave from 28th December 1864, to 25th December, 1865.   The slave was practically manumitted about the 1st of June, 1865.   Upon a suit for this hire the Judge charged the jury that they should find for the plaintiff so much, with interest, as it was proven the slave's services were worth while he served as a slave, and further that this estimate should be made in the legal tender United States paper currency.   *Held*, that there was no error in said charge.

Complaint.   Charge of the Court.   Tried before Judge COLE.   Dooly Superior Court.   October Term, 1867.

John D. Wilkes, as guardian of the minors and orphans of Jefferson R. Westburry, sued Hughes, upon an open ac-

count for $301.00 for hire of a negro (Ben) from 28th December, 1864, to 25th December, 1865.

The plea was, that it was intended that said hire should be paid in Confederate currency, and that the slave was manumitted on the 20th April, 1865.

Plaintiff testified, in his own behalf, that defendant hired Ben on the 28th December, 1864, until the 25th December, 1865, at public outcry, at $301.00, to be paid in Confederate money—that the hire of the negro was worth eleven dollars per month in present currency.

Upon the cross-examination, he was asked, when Ben ceased, by reason of his manumission, to serve defendant as a slave. This was objected to, upon the ground that manumission occurring during the term of hiring, the loss was the hirer's. The Court overruled the objection.

The witness then testified that the negroes ceased to be used as slaves about the first of June, 1865. Here the plaintiff closed.

Defendants examined two witnesses, who agreed that the negroes ceased to be used as slaves about the first of June, 1865. One put the monthly hire at $8.00, and the other at $7.00 or $8.00 per month, in United States currency. They were asked the value of the hire in coin. To this, plaintiff objected, and the Court sustained the objection.

After the argument, the Court charged the jury they should find for the plaintiff so much, with interest, as it was proven the negro's services were worth, while he served as a slave, and further, that this estimate should be made in the legal tender paper currency of the United States.

The jury found for the plaintiff for $40.00 and interest.

The plaintiff in error assigns as error:

1st. The admission of evidence as to when Ben ceased to be a slave.

2d. In holding that plaintiff could recover only up to the time of his manumission.

3d. In refusing to allow proof of the value of the hire in coin, and in charging that the estimate of the jury should be made in United States legal tender Treasurer notes.

Wilkes, guardian, *vs.* Hughes.

SAMUEL HALL, for plaintiff in error, cited White vs. Molyneux, 2d Kelly; Leonard vs. Boynton, 11th Ga. R., 109; Hand vs. Armstrong, 34th Ga. R., 232, as to the general rule of hiring, etc.; secs. 2065, 2066, and 2067 as to its modifications; and said the loss should be on the hirer. Code sec. 2071, 5 E. C. L. R., 989; the ordinance of 1865, did not cover this case.    Bond's administrator vs. Flint and wife, and Culpepper's administrator vs. Slaughter's administrator, decided by this Court, December Term, 1867.

F. T. SNEAD, for defendant in error, furnished no brief to the Reporter.

HARRIS, J.

Until the adoption of our Code, the rigor of the common law principles relative to contracts of bailment, admitted of no modification.   A spirit of equity, consonant with the impulses of conscience, was wisely infused into our present system ; indeed it was impossible to pretermit ample and just provision for apportionment in such a case as this, without marring the obvious purpose of the codifiers, that of rendering the principles and practice of the two sides of the Superior Courts as near as practicable, alike.

This was a contract for the hire of a negro for the year, 1865.   It is an historic fact known to the world that, with the capitulation of the armies of the Southern Confederacy, and the military occupation of Georgia in April, 1865, slavery practically ceased.   The owner could not any longer exercise dominion or control over his slave.   The military authorities not only would not countenance any control, they absolutely prohibited any attempt to hold slaves involuntarily to service.

By a force not to be resisted, and to which the rights of the people of Georgia had to succumb as they were a conquered people and at the mercy of the conqueror, Hughes, the defendent, the hirer of the negro Ben, had, like other whites, to yield.   By the effect of the war and this military compulsion, he lost from April, 1865, the services of the

negro Ben for the remainder of the year, and without any fault on his part. These facts bring his defence clearly within the provisions and equity of the Code, and we affirm the judgment below, apportioning the hire in this case of bailment.